FILED

AUG 31 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| INSOOK KIM, individually, and as Successor in Interest for Aziz R. James, decedent,<br><br>          Plaintiff - Appellant,<br><br>   v.<br><br>CITY OF SANTA CLARA; SCOTT FITZGERALD; TROY JOHNSON,<br><br>          Defendants - Appellees. | No. 10-16335<br><br>D.C. No. 5:09-cv-00025-RS<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Richard G. Seeborg, District Judge, Presiding

Argued and Submitted July 18, 2011
San Francisco, California

Before: TASHIMA and RAWLINSON, Circuit Judges, and RAKOFF, Senior
District Judge.[**]

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

    [**]    The Honorable Jed S. Rakoff, Senior District Judge for the United States District Court, Southern District of New York, sitting by designation.

Plaintiff, Insook Kim (Kim), individually and as a successor in interest to decedent Aziz James (James), appeals from the district court's summary judgment in favor of the defendants in her action alleging that the defendants violated James' Fourth Amendment rights when they used deadly force against him and failed to provide medical care after shooting him.

1.    No reversible error exists regarding Kim's evidentiary objections. The district court expressly stated in its summary judgment findings that it considered Kim's evidentiary objections, but that "even if decided in her favor, [the disputes] do not ultimately impact the holding of this case." *See United States v. Layton*, 767 F.2d 549, 554 (9th Cir. 1985) (discussing the deference afforded evidentiary rulings made by trial courts).

2.    The district court analyzed the totality of the circumstances viewing the facts in the light most favorable to Kim. Even so, no material issue of fact emerged, warranting entry of summary judgment in favor of the defendants on Kim's excessive force claim. *See Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010). The undisputed facts, even in the light most favorable to Kim, established that James had jumped through two windows, was armed with a six-inch knife, had

2

stabbed two victims, had barricaded himself in a stranger's home, and was unresponsive to the officers' commands. In addition, James was actively resisting arrest by barricading the bedroom door with his feet. *See Liberal v. Estrada*, 632 F.3d 1064, 1079 (9th Cir. 2011) (listing factors). Although the officers could have waited indefinitely to take James into custody, they were not required to do so. *See Miller v. Clark*, 340 F.3d 959, 961 (9th Cir. 2003) (approving a five-second lapse between the warning and use of a canine). Considering the totality of these circumstances, the use of a canine to obtain compliance was a reasonable use of force. *See id.* at 965-968.

Once James stabbed the canine and leaned toward the officers with the knife, the situation instantly transformed into a potentially deadly encounter. Faced with a knife-wielding suspect, the officers were justified in their use of deadly force. *See Reynolds v. County of San Diego*, 84 F.3d 1162, 1168 (9th Cir. 1996), *overruled on other grounds in Acri v. Varian Assoc. Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc).

**3.** The district court also properly granted the defendants' motion for summary judgment regarding the medical indifference claim. Although Kim makes a conclusory argument that the defendants knew or should have known by James'

actions that he needed medical attention, there is no evidence in the record to support her assertion. "[A plaintiff's] conclusory allegations unsupported by factual data are insufficient to defeat . . . [d]efendant's summary judgment motion." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (citation omitted); *see also Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002) ("[E]ven for summary judgment purposes, the fact that an expert disagrees with the officer's actions does not render the officer's actions unreasonable.") (footnote reference and internal quotation marks omitted). Additionally, it is undisputed that the cause of death was a gunshot wound to the head and no amount of medical assistance would have saved James' life.

4. The district court did not err in granting summary judgment in favor of the defendants regarding Kim's claim of deprivation of familial relations. We "recognize that parents have a . . . liberty interest in the companionship and society of their children[,]" and that "[o]fficial conduct that shocks the conscience in depriving parents of that interest" violates due process. *Wilkinson*, 610 F.3d at 554 (citations and internal quotation marks omitted). Unfortunately, the situation at issue in this case quickly escalated, culminating in a tragic outcome. Nevertheless,

4

the defendants' use of force, although lethal, does not shock the conscience. *See id.*

**AFFIRMED.**

*Kim v. City of Santa Clara*, No. 10-16335

Tashima, J., dissenting:

I respectfully dissent.  Because the dog attack was an unreasonable use of force as a matter of law, which then precipitated the officers' use of lethal force, I would reverse the district court's grant of summary judgment in favor of defendants in this § 1983 excessive force case.

**1.**     The majority ignores the single most important factor in judging whether the use of force is reasonable:  the immediacy of the threat posed by the suspect to the officers.  *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).  There is no evidence in the record to suggest that the officers believed that James posed an immediate threat, and yet they unleashed "severe" force. *Chew*, 27 F.3d at 1442, *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003) (discussing the severity of the use of canines to arrest suspects).

When the officers released the dog into the room where James was confined, he was surrounded by the police.  Officers were posted at the only window of the bedroom where James had been holed up for more than an hour, thus giving them a clear view of James and his activities.  More officers were in the hallway immediately outside the bedroom door.  The officers knew that James had mental

1

problems and probably was armed with a knife (which, unlike a gun, could not be used to injure the officers through the window or the door). Officers at the window could see that James was lying still on the floor in front of the door. There was no one else in the house or its vicinity. And, up until the moment defendants battered the door, which came falling in and the dog was set upon him, James "did not assault and/or threaten the officers and was not actively resisting."

This evidence compels the conclusion that James did not pose an *immediate* threat to the officers or others. BLACK'S LAW DICTIONARY 816 (9th ed. 2009) (defining "immediate" as "[o]ccuring without delay; instant"); *cf. Miller*, 340 F.3d at 965 (finding the suspect posed an immediate threat where he recklessly drove a car in flight from officers and then fled on foot, possibly armed, in a dark wooded rural area). Moreover, this was not a situation in which the officers were "forced to make split-second judgments" in a "rapidly evolving" situation. *Graham*, 490 U.S. at 396-97. To the contrary, the officers uniformly agreed that they were in no hurry. Instead, they took their time to develop a plan to apprehend James.

A cornerstone of this plan was to unleash a dog attack on an admittedly paranoid, but unresponsive, suspect who thought everyone was trying to kill him. These uncontroverted facts compel the conclusion that the officers' unleashing of severe force, in the absence of an immediate threat or active resistance, was

2

excessive.

2.      The dog attack proximately caused the shooting. Although the defensive use of lethal force in response to a significant threat of death or injury is reasonable, *Garner*, 471 U.S. at 3, "[w]here an officer intentionally or recklessly provokes a violent confrontation, if the provocation is an independent Fourth Amendment violation, he may be held liable for his otherwise defensive use of deadly force." *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002). Accordingly, even if, as the majority concludes, the shooting itself was justified in the moment, the officers may be held liable for James' death if they unreasonably provoked the violent encounter that precipitated the shooting. *See id.* ("[I]f an officer's provocative actions are objectively unreasonable under the Fourth Amendment . . . liability is established, and the question becomes the scope of liability, or what harms the constitutional violation proximately caused."

Importantly, the officers' use of force was reckless, and not merely negligent. *Id.* at 1190-91. The officers knew that, although James was lying on the floor and generally unresponsive, he earlier had "gone nuts" on his friends, believed people were trying to kill him, and was probably armed with a knife. On these facts, the officers were reckless of the possibility that they would provoke a violent response. The release of the dog proximately caused the violent

3

confrontation that led to James' shooting death. I would, therefore, reverse the grant of summary judgment to Defendants and remand for further proceedings.

3. I also would reverse the grant of summary judgment on Plaintiff's Fourteenth Amendment claim for deprivation of the companionship and society of her son, James. As summarized above, the uncontroverted facts show that the officers recklessly provoked a violent confrontation with James, leading to his death. This shocks the conscience under the deliberate indifference standard. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) ("Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience.") (internal quotation marks, citations and alterations omitted); *Farmer v. Brennan*, 511 U.S. 825, 839 (1994) (deliberate indifference requires that "a person consciously disregard a substantial risk of serious harm") (internal quotation marks and alteration omitted).

For these reasons, I would reverse the judgment of the district court, and respectfully dissent.